**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAYNE H. KIESEWETTER, | ) | Bankruptcy No. 05-38469-JAD |
| | ) | Chapter 7 |
| Debtor. | ) | |
| ——————————————— | X | |
| | ) | |
| CONSTANCE K. ELLIOTT; | ) | Adversary No. 07-2202-JAD |
| PATRICIA J. KIESEWETTER; | ) | |
| LINTON A. ELLIOTT; JONATHAN | ) | Doc. No.  23 |
| B. ELLIOTT; and CHARLES L. | ) | |
| ELLIOTT, | ) | |
| Plaintiffs, | ) | |
| - v - | ) | |
| | ) | |
| JAYNE H. KIESEWETTER, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | X | |

**<u>MEMORANDUM OPINION</u>**

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.  The matter before the Court is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(I).  Presently before the Court is the Motion for Summary Judgment filed by Plaintiffs Constance K. Elliott, Patricia J. Kiesewetter, Linton A. Elliott, Jonathan B. Elliott and Charles L. Elliott seeking to have the debt owed by Debtor/Defendant Jayne H. Kiesewetter declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4) and (6).  For the reasons expressed below, the motion will be granted.

# I.

The litigation between these parties has endured since 1993.  Plaintiffs Patricia Kiesewetter and Constance Elliott are sisters of William Kiesewetter. William Kieswetter is the husband of Debtor Jayne Kiesewetter. Jonathan and Charles Elliott are the sons of Constance Elliott and nephews of William Kiesewetter.

Prior to their deaths, the parents of William Kiesewetter had the majority of their assets placed in the names of the Plaintiffs and William Kiesewetter ("Mr. Kiesewetter"). William Kiesewetter was chosen by his parents to manage the family's assets.   Dkt. #26, Statement of Undisputed Facts, Ex. C, Recommendation and Report, (unnumbered) p. 2.

In October 1992, after the death of William Kiesewetter's mother, Plaintiffs filed an accounting action in the United States District Court for the Western District of Pennsylvania (C.A. 93-0573) against William Kiesewetter upon discovering that he had fraudulently appropriated the family assets. Id.  A jury returned a verdict in the accounting action in December 1994 finding William Kiesewetter liable for fraud and unjust enrichment. Id., (unnumbered) p. 3.  A freeze order was then entered against Mr. Kiesewetter and Mrs. Kiesewetter in February 1995.   The freeze order allowed for basic living expenses for Mr. Kiesewetter of $2,500.00 per month but otherwise prevented Mr. and Mrs. Kiesewetter from withdrawal, transfer, encumbrance or disposal of any monies, stocks, real or personal property. Dkt. #26, Statement of Undisputed Facts, Ex.

C, (unnumbered) p. 3.[1]

In April, 1994, an action was brought by the Plaintiffs against Mr. and Mrs. Kiesewetter in the United States District Court for the Western District of Pennsylvania (C.A. 94-576) concerning the alleged misappropriation by them of funds inherited by the Plaintiffs ("District Court action").

The findings and orders entered in that District Court action at C.A. 94-576 are the basis of the present summary judgment motion. The Recommendation of the magistrate judge in the District Court indicates that the Plaintiffs were attempting to recoup family assets which Mr. Kiesewetter attempted to shield from any judgment in the initial accounting action. Id.

The assets that were the subject of the District Court action were monies in an account in a Florida bank and two pieces of real property, the family residence on Pitcairn Place in Pittsburgh, PA and a condominium in Florida.

In March 1999, Plaintiffs obtained partial summary judgment in the District Court action pertaining to the account at the Northern Trust Bank of Florida. Dkt. #26, Statement of Undisputed Facts, Ex. D. The Order further provided that, despite the account being a joint account between Mr. and Mrs. Kiesewetter, Mrs. Kiesewetter had no entitlement to the monies in that account.

After partial summary judgment was granted, the District Court Action proceeded to a jury trial in December of 2002 on the issues of the specific amount

---

[1] The freeze order was upheld on appeal by the United States Court of Appeals for the Third Circuit. Id.

of funds fraudulently transferred into the joint account and whether the real properties or interests therein were fraudulently transferred.

The jury was advised the by District Court it had already determined that the transfer of funds into an account bearing Mrs. Kiesewetter's name was fraudulent "both as a matter of law and by actual intent." Dkt. #26, Statement of Undisputed Facts, Ex. A, Transcript, 12/10/2002, p. 98, lns. 4-8. The jury was asked to determine the specific amount of monies transferred and whether Mrs. Kiesewetter colluded with her husband in those transfers. If she did collude, the jury was to then determine whether it was with fraudulent intent.

The jury determined that as to the monetary transfer, Mr. Kiesewetter fraudulently transferred the amount of $2,842,000.00 into accounts titled in either Mrs. Kiesewetter's name solely or in joint accounts with Mr. Kiesewetter. Dkt. #26, Statement of Undisputed Facts, Ex. E., Q.1. The jury answered affirmatively in response to the following questions:

> Did Jayne H. Kiesewetter collude with or otherwise actively participate with her husband in the fraudulent transfer of money into accounts titled in her joint or sole name between late October 1991 and January 1995? Collude means to connive with one another, to conspire, to plot, to work together for a common goal.
>
> If "Yes", did she do so with fraudulent intent? Fraudulent intent means with an intent to defraud, to deceive, acting in bad faith.

Id., Ex. E, Q. 8.a.,b.

It was also decided by the jury that Mrs. Kiesewetter was unjustly enriched

with regard to the assets placed in her sole or joint name in the amount of $1,400,000.00. Id. Q. 11.a., b. Liability for punitive damages was also awarded against Mrs. Kiesewetter in the amount of $600,000.00. Id., Q. 13.a.,b.

Following the jury trial, the District Court entered an order on February 26, 2003 granting Plaintiffs' Motion for Avoidance of Realty Transfers, Execution Levy, Entry of Judgments, Award of Pre-Judgment Interest and Such Further Equitable Relief as is Appropriate.  Dkt. # 26, Statement of Undisputed Facts, Ex. G. The order granted, in relevant part, judgment in favor of Plaintiffs and against Mr. and Mrs. Kiesewetter jointly and severally in the amount of $3,791,395.20 for the fraudulent transfer of money into accounts titled in Mrs. Kiesewetter's name either solely or jointly with Mr. Kiesewetter from late October 1991 through January 1995. Id., ¶4. Judgment was also entered in that same order against Mrs. Kiesewetter individually in the amount of $3,385,804.00 for unjust enrichment and punitive damages with respect to the money transfers. Id., ¶5.[2]

At oral argument at the hearing on the Motion for Summary Judgment at issue, Plaintiffs stated that they were seeking nondischargeability as to the debt owed concerning the transfer of monies only and not related to the transfers of interest in the real property.  As a result of that clarification, which was not apparent from the pleading, this opinion will analyze and address nondischargeability only as it relates to debt owed relating to the money transfers

---

[2]  Among other things, the February 26, 2003 Order awarded the Plaintiffs pre-judgment interest and calculated the amount of the judgments as of February 26, 2003.

referenced above.

## II.

Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056, permits a court to grant summary judgment "if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing that there is no genuine issue of material fact rests with the movant. Id. at 242. The facts must be viewed in a light most favorable to a non-moving party. Id.  Once the moving party meets its burden, the burden moves to the non-moving party. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

At the summary judgment stage, the court is to determine whether genuine issues of material disputed fact exist, not to reach a resolution on such issues if a genuine issue of material fact exists. Anderson, 477 U.S. at 248-249.

In an action to determine dischargeability of a debt, the creditor has the burden of proving by preponderance of the evidence that the debt is nondischargeable.  See e.g., Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654 (1991).  The primary basis of Plaintiffs' Motion for Summary Judgment is the

findings and judgments entered in the action brought by the Plaintiffs in the United States District Court for the Western District of Pennsylvania at C.A. No. 94-0576.  Plaintiffs assert that Debtor is precluded from relitigating those findings that have already been determined in the District Court Action and therefore there are no genuine issues of material fact.  Those findings and judgments, Plaintiffs argue, are relevant for determining and establishing nondischargeability.

Issue preclusion (collateral estoppel) is applicable in proceedings concerning dischargeability of debts in bankruptcy court.  Grogan v. Garner, 498 U.S. at 284-285 n.11, 111 S.Ct. 654, 658.  In this case, the relevant proceeding that is relied upon for application of the issue preclusion doctrine was the District Court Action.  When the prior judgment is issued by a federal court, federal principles of issue preclusion are to be applied.  In re Docteroff, 133 F.3d 210, 214 (3d Cir. 1997).  In order for issue preclusion to apply and prevent a party from relitigating an issue, the following must be present:

> (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.

Id., citing Matter of Ross, 602 F.2d 604, 608 (3d Cir.1979); Restatement (Second) Judgments § 27 (1982).

Debtor does not dispute the findings and rulings of the District Court.  Dkt. #32, Brief in Opposition to Motion for Summary Judgment, p. 2. In fact, Mrs.

Kiesewetter concedes that there are no genuine issues of material fact. Id., p. 4. Rather, Debtor contends that the findings and rulings of the District Court do not support a finding of nondischargeability and therefore the Debtor contends that Plaintiffs are not entitled to summary judgment as a matter of law. Id., p. 2.

## III.

A fundamental goal of bankruptcy is to afford a financial "fresh start" to consumers strapped with burdensome debt. The entitlement to bankruptcy relief, however, is not absolute. As the United States Supreme Court has recognized:

> The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an "honest but unfortunate debtor."

Cohen v. de la Cruz, 523 U.S. 213, 217-218, 118 S.Ct. 1212, 140 L.Ed. 2d 341 (1998). In this case, the Plaintiffs contend that the Debtor is not an "honest but unfortunate debtor." As a result, the Plaintiffs contend that the debts due the Plaintiffs from the Debtor are not dischargeable.

Specifically, Plaintiffs contend that summary judgment should be granted to declare the debt due them nondischargeable on the basis of 11 U.S.C. §523(a)(2)(A). Under this section of the Bankruptcy Code, a debt is excepted from discharge if the debt is "for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by - (A) false pretenses, a false representation, or actual fraud, other than a statement  respecting the debtor's or an insider's financial condition".

In invoking 11 U.S.C. § 523(a)(2)(A), Plaintiffs rely upon the language "actual fraud" as the basis for their summary judgment motion.  Further, they contend that the undisputed facts established in the District Court Action sufficiently establish the elements necessary for a finding of fraud.

The Debtor argues that section 523(a)(2)(A) requires proof of specific elements: (1) a representation material to the issue at hand; (2) knowledge that the representation is false when made; (3) an intention to mislead another into reliance on the false representation; (4) reasonable reliance upon the false representation; and (5) damages resulting from the reasonable reliance upon the false representation.   Dkt. #32, Brief in Opposition to Motion for Summary Judgment, p. 6.   It is argued that because there was no affirmative misrepresentation made by Mrs. Kiesewetter to the Plaintiffs, the elements of §523(a)(2)(A) cannot be met.  Therefore, Mrs. Kiesewetter contends there can be no finding of nondischargeability under this subsection. Id., p. 7.

The reach and extent of section 523(a)(2)(A) has been stated differently by different courts. The United States Supreme Court in Field v. Mans, 516 U.S. 59, 116 S. Ct. 437 (1995), addressed whether justifiable or reasonable reliance was required for finding false misrepresentation under section §523(a)(2)(A).   This Court's reading of Field v. Mans is that the Supreme Court in that case addressed solely misrepresentation as a form of fraud; and the Supreme Court did not address other forms of fraud.  This distinction is important because litigants often presume, albeit incorrectly, that in order to find a debt nondischargeable under

§523(a)(2)(A) there must have been an actual misrepresentation.  See e.g., McClellan v. Cantrell, 217 F.3d 890, 892-893 (7th Cir. 2000)(opinion by Posner, J.) and the summary of cases cited therein.

Some courts have interpreted section 523(a)(2)(A) more broadly and do not require a specific misrepresentation to find a debt nondischargeable under that statute.   Most notably, in McClellan v. Cantrell, supra, the United States Court of Appeals for the Seventh Circuit stated that by distinguishing between a "false representation" and "actual fraud", the statute makes clear that the term "actual fraud" is broader than misrepresentation.  The McClellan court noted that COLLIER ON BANKRUPTCY defines the term "actual fraud" as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another".  Id.  at 893 citing 4 COLLIER ON BANKRUPTCY ¶523.08[1][e] (15th ed., Lawrence P. King, ed., 2000).   The McClellan court went on further regarding actual fraud:

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth.  No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling and any unfair way by which another is cheated.

Id. citing Stapleton v. Holt, 250 P.2d 451, 453-54 (Okla. 1952).  The McClellan court also recognized that the statute was applicable only to actual fraud but did not extend to constructive fraud.  Id. at 894.

McClellan distinguished Field v. Mans on the basis that the fraud involved in Field v. Mans took the form of a misrepresentation only and therefore no other type of fraud was analyzed in that case. 217 F.3d at 892. However, the opinion in Field v. Mans did not imply that a misrepresentation was the only form of fraud that was nondischargeable under section 523(a)(2)(A). Id.

The determination of the Seventh Circuit in McClellan that §523(a)(2)(A) is not limited to misrepresentations was followed by the Court of Appeals for the Sixth Circuit in In re Vitanovich, 259 B.R. 873 (B.A.P. 6th Cir. 2001). The Court of Appeals for the Third Circuit has not addressed this specific issue. Other decisions from this district, however appear to adopt the position asserted in McClellan. See e.g., In re Barber, 281 B.R. 617 (Bankr. W.D. Pa. 2002); In re Kramer, 317 B.R. 297 (Bankr. W.D. Pa. 2004); see also In re Ali, 321 B.R. 685, 690 (Bankr. W.D. Pa. 2005) (acknowledging split over whether "actual fraud" within the meaning of §523(a)(2)(A) means more than a "false representation").

This Court sees no reason to deviate from McClellan, supra. In McClellan, the brother of the debtor purchased equipment for $200,000 to be paid in installments. When he defaulted, owing $100,000, the brother transferred the machinery to the debtor, who was his sister, for $10. At the time, there was a lawsuit pending against the brother seeking to enjoin him from transferring the machinery. The sister, aware of the pending suit, accepted the machinery and then sold it for $160,000. The sister filed bankruptcy after the creditor, McClellan, added her to the collection lawsuit. During the debtor sister's

bankruptcy, McClellan filed a dischargeability complaint based on §523(a)(2)(A). The complaint was dismissed by the bankruptcy court, in reliance on <u>Field v. Mans</u>, <u>supra</u>, for lack of material misrepresentation or reliance.

In reversing the lower court decision, the Court of Appeals for the Seventh Circuit in <u>McClellan</u> focused on the debtor's intent and the distinction between constructive and actual fraud. The court noted that the debt would not have been obtained by actual fraud if the debtor sister did not intend to hinder the creditor from collecting the debt. But she was alleged to have been a full and equal participant in her brother's fraud. As a result, the court found that the debt arose by operation of law from the fraud of the debtor. The debt owed by the debtor sister was created when she prevented the creditor from collecting the money owed by her brother. According to the court in <u>McClellan</u>, that debt was non-dischargeable. As Judge Posner wrote:

> Pressed at argument, her lawyer was unable to suggest any reason why the type of fraud presented by the allegations of McClellan's complaint should be treated differently from other types of fraud. The two- step routine that McClellan alleges and that we must take as true– in which Debtor A transfers valuable property to B for nothing in order to keep it out of the hand's of A's creditors and B then sells the property and declares bankruptcy in an effort to shield herself from liability for having colluded with A to defeat the right's of A's creditors – is as blatant an abuse of the Bankruptcy Code as we can imagine. It turns bankruptcy into an engine for fraud. Though cases often say that exclusions from dischargeability should be narrowly construed, we have emphasized that they [i.e., the exclusions from discharge] serve vital functions. Congress concluded that preventing fraud is more important than letting

> defrauders start over with a clean slate, and we must
> respect that judgment.

McClellan, 217 F.3d at 893 (quotations and case citations omitted).

A scenario similar to the one in McClellan is present in this case before the Court. An order was entered in the District Court Action granting partial summary judgment on the basis that Mr. Kiesewetter had fraudulently transferred monies into joint accounts with Mrs. Kiesewetter and/or accounts in Mrs. Kiesewetter's name only. The jury determined that Mrs. Kiesewetter colluded with or otherwise actively participated with her husband in the fraudulent transfer of money to the detriment of the Plaintiffs. Doc. #26, Statement of Undisputed Facts, Ex. E, p.4, Q.8.a. Collusion was specifically defined in the District Court Action as meaning "to connive with one another, to conspire, to plot, to work together, for a common goal." Id. The jury answered the question regarding Mrs. Kiesewetter's collusion affirmatively. In addition, the jury determined that Mrs. Kiesewetter's collusion with Mr. Kiesewetter regarding the transfers were done with fraudulent intent. Id., Q.8.b. Fraudulent intent was defined as meaning "intent to defraud, to deceive, acting in bad faith". Id.

Applying the facts established by the record in the District Court Action, the Court finds that the elements for actual fraud have been satisfied. The cumulative findings by the District Court in its partial summary judgment ruling combined with findings by the jury that Mrs. Kiesewetter colluded with her husband in the fraudulent transfer of monies, and that she did so with fraudulent intent, lead this

Court to the conclusion that the factual basis for establishing the requisite elements for nondischargeability pursuant to §523(a)(2)(A) have been met.  <u>See</u> <u>McClellan</u>, 217 F.3d 890 (7th Cir. 2000).  Therefore, the Court finds the debt owed by Mrs. Kiesewetter to Plaintiffs is nondischargeable on the basis of 11 U.S.C. §523 (a)(2)(A).

Although the Court has found the debt to be nondischargeable on the basis of §523(a)(2)(A), the issues of §523(a)(4) and §523(a)(6) will nevertheless be addressed for purposes of completeness.

## IV.

Plaintiffs further seek summary judgment on their dischargeability complaint based upon 11 U.S.C. §523(a)(4).  Section 523(a)(4) of the Bankruptcy Code provides that an individual debtor is not discharged from any debt that is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. §523(a)(4).  Plaintiffs contend that sufficient facts were established in the District Court Action for a determination of nondischargeability based on larceny.  The Debtor argues that a determination of larceny cannot be made since no allegation of larceny was ever pled or decided in the District Court Action.  The Debtor also contests the applicability of the other grounds of nondischargeability within §523(a)(4).  Those grounds were not part of Plaintiffs' motion and therefore will not be addressed.

When determining larceny for nondischargeability purposes, the federal common law definition of larceny may be utilized.  <u>Bryant v. Lynch (In re Lynch)</u>

315 B.R. 173, 179  (Bankr. D. Colo. 2004); see also DirecTV v. Deerey (In re Deerey), 371 B.R. 525 (Bankr. M.D. Fla. 2007); 4 COLLIER ON BANKRUPTCY ¶523.10[2] (15th ed. rev., 2007).   That definition provides that larceny is a "felonious taking of another's personal property with intent to convert it or deprive the owner of same." Deerey, supra; In re Schlessinger, 208 Fed. Appx. 131, 133 (3d Cir. 2006).[3] The term "felonious" has been defined as "proceeding from an evil heart or purpose; malicious; villainous...Wrongful; (of an act) done without excuse or color of right".  BLACK'S LAW DICTIONARY (8th ed. 2004).

Larceny requires that the initial appropriation of another's property be wrongful.   It differs for nondischargeability purposes in this respect from embezzlement.   Embezzlement is the "fraudulent appropriation of property by a person when such property has been entrusted, or into whose hands it has lawfully come." In re Ishmael, Adv. No. 07-287, 2008 WL 80040 (Bankr. E.D. Pa. Jan. 7, 2008).

The initial transfer of the funds into the accounts of Mrs. Kiesewetter was done by her nondebtor husband, Mr. Kiesewetter.   Mrs. Kiesewetter argues that because she was merely the recipient of the funds, and not the person who transferred them, it cannot be said that she took the property.   Absent such a taking, it is contended, the elements of §523(a)(4) cannot be met.

---

[3] Larceny has alternatively been defined as being the "wrongful taking and carrying away of the property of another with the intent to convert such property to the taker's use without the consent of the owner." See e.g., In re Eggleston, 243 B.R. 365, 378 (Bankr. W.D. Mo. 2000).

Although Mrs. Kiesewetter did not perform an actual transfer of funds, the jury found that Mrs. Kiesewetter colluded with or otherwise actively participated in the fraudulent transfer and did so with fraudulent intent.  That collusion is sufficient to establish the first element of the common law definition of larceny, i.e. that the property was taken feloniously.  Mrs. Kiesewetter's collusion with Mr. Kiesewetter was done with fraudulent intent which was defined as "intent to defraud, to deceive, acting in bad faith."  Such fraudulent intent, as defined by the District Court,  is sufficient to determine that the taking of the property was done with the intent to convert it or deprive Plaintiffs of the property.  Thus, having colluded or actively participated in the fraudulent transfer of funds from Plaintiffs, the Court finds that the requirement that the Debtor wrongfully took property from the Plaintiffs with the fraudulent intent to convert it to her own use has been met. The debt due the Plaintiffs from the Debtor is therefore nondischargeable pursuant to 11 U.S.C. §523(a)(4).

## V.

11 U.S.C. Section 523(a)(6) provides that a discharge does not discharge an individual from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. §523(a)(6).  For a debt to be nondischargeable under this subsection, the debt must derive from a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S. Ct. 974,  977 (1998).  In addition, all liability, including punitive damages, associated with a nondischargeable debt

for fraud has been held to be nondischargeable where the underlying debt is nondischargeable.  Cohen v. de la Cruz, 523 U.S. 213, 118 S. Ct. 1212 (1998).

The state of mind required for finding willful and malicious was not specified in Geiger, supra.  The Court of Appeals for the Third Circuit in In re Conte, 33 F.3d 303 (3d Cir. 1994), appears to have adopted what has been referred to as the "objective approach" to ascertaining what actions constitute willful and malicious injury.  See e.g., Lavrich v. Scott (In re Scott), 294 B.R. 620 (Bankr. W.D. Pa. 2003).  That is, the Third Circuit held that actions are willful and malicious if they "either have a purpose of producing injury or have a substantial certainty of producing injury."  Conte, 33 F.3d at 307.

No decisions regarding the interpretation of the subsection 523(a)(6) have been rendered by the Court of Appeals for the Third Circuit since the Supreme Court decision in Geiger.  However, the Conte decision and the standards set forth therein appears to retain vitality.  See e.g.,  Scott, supra; In re Jacobs, 381 B.R. 128, 137, f.n.18. (Bankr. E.D. Pa. 2008).

Plaintiffs contend that the finding of punitive damages by the jury support the conclusion that they suffered a willful and malicious injury.  In the District Court Action, the jurors were instructed that punitive damages could be awarded if they found the behavior of the Debtor to be "outrageous".  Outrageous conduct by a person was defined as:

> when he acts with a bad motive, which is also referred to as malicious conduct, or when he acts with reckless indifference to the interests of others. The sole purpose

> of punitive damages, the only purpose for which you make an award and set an amount of punitive damages, is to punish a Defendant's outrageous conduct and to deter Defendants and others from commission of like acts.

Dkt. # 23, Motion for Summary Judgment, Ex. A, Transcript 12/18/2002, p. 172, lns. 17-24. The jury in the District Court Action determined that the conduct of Mrs. Kieswetter was outrageous. Stated in other words, Mrs. Kiesewetter acted with a bad motive, which is also referred to as malicious conduct, or that she acted with a reckless indifference to the Plaintiffs. This Court finds that such conclusions are binding on these proceedings.

Common sense would also appear to dictate that the debt due the Plaintiffs falls within the "willful and malicious injury" exception to the bankruptcy discharge. Again, the facts of this case as found by the District Court and the jury it empaneled is that Jayne H. Kiesewetter colluded with or otherwise actively participated with her husband in the fraudulent transfer of funds into accounts titled in her joint or sole name between late October 1991 and January 1995; and according to the District Court and jury, she acted in bad faith with an intent to defraud and deceive the Plaintiffs. Based on the record established in the District Court Action, there is no genuine issue of material fact that Mrs. Kieswetter's conduct had purpose of producing injury, or was done with substantial certainty of producing injury, to the Plaintiffs in the form of the loss of funds. Under these circumstances, the Court concludes that summary judgment is appropriate and the debt due the Plaintiffs from the Debtor is nondischargeable pursuant to 11

00002074.WPD

18

U.S.C. §523(a)(6). <u>See McClellan</u>, 217 F.3d at 898 (Ripple, J., concurring)(citing

<u>In re Bammer</u>, 131 F.3d 788 (9th Cir. 1997)).

## VI.

For the reasons stated above, the Court concludes that the Plaintiffs are precluded from relitigating issues previously determined by the jury in the fraudulent transfer action at C.A. No. 94-576 and by the United States District Court for the Western District of Pennsylvania in its findings and orders entered of record therein.  Those findings, determinations and orders provide a factual basis to determine that the elements of nondischargeability of debt have been met under 11 U.S.C. §§523(a)(2)(A), (a)(4) and (a)(6).  Summary judgment will be granted as to Plaintiffs' complaint for nondischargeability of debt on the counts based on §523(a)(2)(A), (a)(4) and (a)(6).

An appropriate order shall be entered.


Dated this 24th day of July, 2008          /s/ Jeffery A. Deller
                                                       Jeffery A. Deller
                                                       U.S. Bankruptcy Judge


case administrator to serve:

Ronald L. Hicks, Jr., Esq.
John P. Lacher, Esq.
Carlota M. Böhm, Esq.

**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAYNE H.  KIESEWETTER, | ) | Bankruptcy No. 05-38469-JAD |
| | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ | X | |
| | ) | |
| CONSTANCE K. ELLIOTT; | ) | Adversary No. 07-2202-JAD |
| PATRICIA J. KIESEWETTER; | ) | |
| LINTON A. ELLIOTT; JONATHAN | ) | Doc. No.  23 |
| B. ELLIOTT; and CHARLES L. | ) | |
| ELLIOTT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| - v - | ) | |
| | ) | |
| JAYNE H. KIESEWETTER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | X | |

**ORDER OF COURT**

**AND NOW**, this **24th** day of **July, 2008**, for the reasons expressed in the

Memorandum Opinion issued simultaneously, the Court hereby **ORDERS,**

**ADJUDGES** and **DECREES** as follows:

1.     The Motion for Summary Judgment filed by Plaintiffs is **granted**.

2.     The debt owed by Debtor/Defendant Jayne H. Kiesewetter is declared

nondischargeable in this or any other bankruptcy involving the

Debtor pursuant to 11 U.S.C. §§523(a)(2)(A), 523(a)(4), and 523(a)(6).


July 24, 2008                          /s/ Jeffery A. Deller
                                       Jeffery A. Deller
                                       U.S. Bankruptcy Judge


case administrator to serve:

Ronald L. Hicks, Jr., Esq.
John P. Lacher, Esq.
Carlota M. Böhm, Esq.

00002074.WPD                           2